GRIFFIN, J.
E.P.W., a child, appeals an order adjudicating him delinquent based on two counts of misdemeanor criminal mischief.
On December 4, 2003, two cars, a 1994 Chevrolet Camaro and a 1999 Mitsubishi Eclipse, were “keyed” in the parking lot at Mainland High School.[1] The estimated cost of repairs totaled approximately $1,400.00.
At E.P.W.’s trial for this offense, there was little direct evidence tying him to the offenses. The owner of the Mitsubishi said that the day after the incident, someone in his tennis class said that he had heard that someone named “Eddie”[2] had been talking about how he had keyed a car.
*337 Bud Spicer [“Spicer”], an assistant principal at Mainland High School, testified that he saw Robert Juno [“Juno”] and E.P.W. standing around in the parking lot the day of the incident. He had been trying to talk to Juno and E.P.W. about vandalism in the parking lot for several days. ■ The two boys got in a car and drove off although the assistant principal tried to stop them. Juno came back at the end of the day to pick up E.P.W.’s truck. Spicer and some others stopped Juno as he tried to exit the parking lot. Spicer claims that at this point Juno volunteered that E.P.W. had keyed the two cars in the parking lot.
Juno testified at trial that he went back to the school to get E.P.W.’s truck because E.P.W. had received a phone call from a girlfriend telling him that they were searching his truck. E.P.W. waited across from the school in a K-Mart parking lot. As Juno attempted to leave the parking lot in E.P.W.’s truck, he was stopped by Spi-cer and several others. He admitted that he had gone to the office, where he provided a written statement. Juno read the statement aloud, which said:
I saw [E.P.W.] key a Blue Mitsubishi and a Greén Camaro. With a Key. He also told me in the hallway that he did it. When I asked him why he did it he told me for no reason he just wanted to.
He said that he remembered writing the statement, in which he had said that E.P.W. had keyed the two vehicles. However, he testified that E.P.W. had not told him that he had keyed the two vehicles and that the statement was a fabrication. He explained that upon being stopped by the deputy and school administrators, he was “scared and nervous.” They took his keys and searched E.P.W.’s vehicle. They also threatened him with suspension and expulsion. They took him back to the office, where he told them what they wanted to hear.
Upon prompting by the court, the State asked to have Juno’s statement admitted into evidence. The court asked E.P.W. whether he had any objections. Defense counsel said he did object. The court overruled the objection and admitted the statement into evidence under section 90.614(1), Florida Statutes:
(1) When a witness is examined concerning the witness’s prior written statement or concerning an oral statement that has been reduced to writing, the court, on motion of the adverse party, shall order the statement to be shown to the witness or its contents disclosed to him or her.

Id.

Another student at Mainland High School, Christie Stohler [“Stohler”], next testified. She said she overheard E.P.W. talking to friends in the hallway at school on December 4, 2003. She testified only that she heard him talking about “the car thing.” When pressed, she said:
I heard him talking about it. I didn’t hear him say he did it or anything.
Stohler admitted writing a statement on December 5, 2003, in which she said:
I heard [E.P.W.] talking about keying a car and his friend told him to be quiet cause someone would hear him [E.P.W.].
In Stohler’s trial testimony, she suggested that she had simply overheard other people saying that he had done it. Stohler finally said, “No. I didn’t really hear anything.”
At the close of the State’s case, E.P.W. moved for a voluntary dismissal, arguing that the State had failed to present a “prima facie” case of criminal mischief. The court denied the motion.
At the close of all the evidence, E.P.W. argued that the State had failed to carry its burden of proving him guilty of criminal mischief beyond a reasonable doubt be *338 cause the State’s case was based on prior inconsistent statements and showed only that he had been in the parking, lot. However, the court found E.P.W. was guilty of two counts of criminal mischief, stating:
There’s no question that your son — that you were in the parking lot that day. You refused to stop when they tried to stop you when you were leaving the parking lot and you didn’t come back to the parking lot. That’s consistent with doing something wrong.
That in and of itself would probably not be enough but I. do believe Juno’s handwritten statement. I got to personally watch him and see him here today and I don’t give him my credibility here today at all. I don’t think he was coerced. I think he finally told the truth and I don’t think he was truthful to his mother.
I think the Stohler girl’s statement has you positively stating that you were doing it and told to be quiet and I’m going to find him delinquent in both counts, one and two.
We reverse because Juno’s prior inconsistent written statements describing E.P.W.’s admissions were admissible for the limited purpose of impeachment, not as substantive evidence.[3] Once Juno recanted at trial and denied that E.P.W. had ever made these statements, they could not be admitted as evidence that he committed the crime.
In State v. Green, 667 So.2d 756 (Fla. 1995), the supreme court held that a prior inconsistent statement of a child .victim of sexual abuse introduced pursuant to the provisions of section 90.803(23), Florida Statutes, was insufficient, standing alone, to sustain a criminal conviction, where the statement directly conflicted with the victim’s trial testimony. The supreme court said:
Our decision in State v. Moore, 485 So.2d 1279 (Fla.1986) (Moore II), is dis-positive and requires a finding that this evidence, standing alone, is insufficient to convict Green.
In Moore II, we held that, in a criminal prosecution, a prior inconsistent statement standing alone is insufficient as a matter of law to prove guilt beyond a reasonable doubt. We reiterate that decision today, finding that our holding in Moore II applies regardless of whether the prior inconsistent statement is admitted under section 90.801(2)(a) or section 90.803(23).
Id. at 760. McFarland v. State, 764 So.2d 834 (Fla. 5th DCA 2000), a case from this court, involved the attempted revocation of a defendant’s probation for starting a house fire. At the revocation hearing, the State attempted to prove the defendant’s guilt through the testimony of a fire marshal and deputy, who testified that a woman, Kristian Hutsenpiller, had told them that the defendant had told her that he set some houses on fire. In finding that this testimony was not admissible, this court explained:
At the revocation hearing, Hutsenpiller’s statements were introduced through the testimony of the fire marshal and deputy. Hutsenpiller, herself, testified that she could not remember making these statements, and denied that McFarland said that he had set the house on fire. Ms. Hutsenpiller’s statement to the fire marshal and deputy about what McFarland told her was double hearsay. Had Hutsenpiller so testified at the hearing, it may have been admissible as an admission against interest or confession-still hearsay-but admissible to prove the *339 violation as a substantive matter. But she recanted and denied saying that McFarland said anything about setting houses on fire. So the statement is not admissible on that basis.
Id. at 835 (footnote omitted) (emphasis added).
We conclude that Juno’s prior inconsistent statements describing E.P.W.’s admissions against interest were not admissible at trial as substantive evidence. E.P.W.’s statements were hearsay within hearsay, and could not be admitted once Juno recanted at trial and denied that E.P.W. had ever made these statements.
REVERSED and REMANDED.
PALMER and TORPY, JJ., concur.

. “Keyed” means that someone took a key and used it to run along the side or top of the vehicle, scratching the exterior.

. E.P.W.’s first name is "Eddie.”

. To the extent that Stohler's prior written statement can be construed to record an admission by E.P.W., our opinion applies equally to it.